# Exhibit 1

███████████████████

**<u>Legal Opinion Relating to Issues Arising</u>**
**<u>Under Lebanese Law</u>**

**John Doe, Decedent v. The Islamic Republic of Iran,**
**D.D.C. Civil Action n° 08-540- JDB**

I, ██████████ , senior partner and managing director of the Law firm ████████████████████████████████████ , hereby provide this legal opinion upon the request of Crowell and Moring LLP.

**<u>Issues to be addressed</u>**

I submit the present opinion in response to queries of Crowell and Moring LLP relating to certain issues of Lebanese law to be submitted in connection with the matter, *John Doe, Decedent v. The Islamic Republic of Iran*, D.D.C. Civil Action n° 08-540-JDB.

Specifically, I have been requested to provide a legal opinion regarding the following issues of Lebanese law[1]:

Issue 1: the succession rights of immediate family members when an individual dies; specifically a) which immediate family members are heirs at law and b) the judicial or other governmental or administrative procedure for identifying heirs at law.

Issue 2:  the right of immediate family members to seek compensation for emotional distress suffered as the result of the wrongful death or injury of an immediate relative.

Issue 3:  whether a claim for emotional distress survives the death of the injured person and the right of the heirs at law to bring a claim on behalf of the decedent for damages for the decedent's injury.

---

[1] Lebanese law frequently relies on French civil law and jurisprudence, and thus, this opinion cites to both Lebanese and French law where appropriate.

███████████████████



**Experience and Qualifications**

Attached to this opinion, is a copy of my curriculum vitae which sets forth in more detail my experience and qualifications to serve as an expert on Lebanese law.

I am fluent in Arabic and French and understand and read English and can speak some English. Accordingly, I drafted this opinion in French, my assistant assisted me in translating it into English. I have reviewed both the English and the French versions and confirm that they are accurate.

**Issue 1: Succession rights under Lebanese Law**

**1.1    Preliminary remarks**

i. In Lebanon, the law of succession lies at the intersection of religious law and civil law, and, thus, the applicable law may differ depending on the religion of the decedent.

There are two principle sources of law:  Sharia law for Muslims and civil law for non-Muslims. The succession for Muslims is governed by Sharia law. This law is based on the privilege of masculinity, the prohibition of inheritance by right of representation (according to which the share of an heir, when that heir dies, is transferred to that heir's children), and rigid rules regarding intestate succession In contrast, the non-Muslims are subject to the civil law dated June 23,1959, which provides for gender equality in the rights of succession, accepts succession by right of representation, and recognizes illegitimate children as legal heirs. (*See P. Gannagé, in Jurisclasseur droit comparé, Fasc.3, V° Liban, Successions.*)

The estate of the Muslim Sunni decedent is governed by the Sharia law as construed by the Hanafi School; the estate of the Muslim Shiite decedent by the Sharia law as construed by the Jaafari school; the estate of the Druze decedent by a law passed by the Parliament on February 24, 1948. According to the provisions of said law, if the Druze decedent died without a will,

his estate is governed by the Sharia as construed by the Hanafi School.[2]

ii. Under Lebanese law, the inheritance, including assets, credits, and debts, is transferred directly and *ipso jure* to the heirs (before the settlement of the debts associated with the estate) as if the heirs continued the legal person of the deceased. The transfer is immediate and does not require judicial authorization. This principle applies for both non-Muslims and Muslims.

For non-Muslims, this principle is provided in Article 2 of Law of 23 June 1959 (providing that "the inheritance is open and the estate devolves on the heirs by the death of the decedent..."). (*See also Court of Civil Appeal, (Appeal) Beirut, 14 May 1946, Lebanese Judicial Magazine (L.J.M) 1946 p. 379; Appeal Beirut n° 300, dated 2 June 1992, mentioned in Najjar, Droit matrimonial- Successions (in French), Beirut, 3rd edit. 2003, n<sup>o</sup> 360 et seq.).*

There are no similar, clear and express provisions in the Sharia law. However, the Hanafi (applicable to Sunni Muslims and Druze Muslims) and Jaafari Schools (applicable to Shiite Muslims) instructs how the inheritance is shared among the heirs, but does not refer to the decedent's estate as a separate legal entity. Thus, under Sharia law, the inheritance remains with the person of the decedent in such a way that the heir continues as the legal person of the decedent. (*See S. Mahmassani, Course on Muslim Law (in Arabic), Beirut, 3rd edit. 1962, p. 254 and 255; Najjar, eodem loco.*)

Accordingly, under all Lebanese laws, the rights of the decedent survive the decedent's death and may be pursued by the decedent's legal heirs.

---

[2] In presence of a will, the inheritance is devolved according to such will. Should the decedent leave no will or should the will be null and void, then the inheritance is devolved according to the Sharia.

### 1.2    Determination of the heirs-at-law

#### 1.2.1 Non-Muslim decedent (Law of June 23, 1959)

Under Lebanese civil law, the parents' heirs are divided into four canons: children and their descendants, parents (father and mother) and their descendants; grandparents and their descendants; the spouse (wife or husband).

Absent a will, the immediate heirs at law of a decedent are the spouse, children, and parents.[3]  The right of representation is applied *ad infinitum.*  Thus, for example, if the child predeceases the decedent, the grandchild replaces his deceased father or mother in the estate.  If the decedent dies without a living spouse, children or parents, the entire estate is devolved to the grandparents of both ascending lines or their descendants. In such a case, each set of grand parents or their descendants inherit half the estate.

#### 1.2.2  Muslim (Sunni, Shiite or Druze[4]) decedent

Under Sharia law, in the absence of a will,[5] the immediate heirs at law of a Sunni[6] or Shiite Muslim or Druze decedent are the spouse, children, and parents.

---

[3]  This opinion only addresses the determination of the heir at law and does not describe the specific shares to which each heir is entitled.

[4] Article 169 of the law dated February 24, 1948 governing the estate of the Druze decedents provides that such estate relies primarily on the will of the decedent.

[5] According to Sharia law, a will made in favour of an heir is enforceable insofar as the remaining heirs authorize it. If not an heir at law, a legatee who is bequeathed more than the third of the decedent's estate cannot receive such portion without the heirs' authorization. Unlike the Sunni and the Shiite Muslims, there are no similar restrictions on Druze decedent's will.

[6] There is one exception for the Sunni Muslims that must be noted.  If, for example, a Sunni father passes away leaving daughters (but no sons) and a wife as heirs, then the daughters do not inherit the full share of the estate allocated to the children of the decedent; rather, the uncles of the daughters (if they survive the decedent) or the cousins of the daughters (if the uncles did not survive the decedent) also will receive a certain part of the share allocated to the children and thus become immediate heirs.  If, in the above example, the decedent leaves parents as heirs in addition to the wife and the daughters, then the uncles and cousins do not share in the estate.

4

**1.3 Establishing the Status of an Heir-at-Law (both Muslim and non-Muslim)**

**1.3.1 The Judicial certificate of inheritance (Hassr Erss)**

i.    It is important to note that the status of heir can be proven by any number of methods, most commonly by a judgment called *Hassr Erss,* i.e., a "judicial certificate of inheritance." (*Najjar. op. cit. no 328*).

ii.   Upon the petition of any person having a legitimate interest, the *Hassr Erss* judgment is rendered by a single Civil Judge for the non-Muslims, by the Cadi el Shareh for the Muslims, and by the Cadi Mazhab for the Druze (also both single Judges).

In support of his petition, the petitioner submits a death certificate delivered by the Directorate of the Civil Status within the Ministry of Interior, a family civil status record ("extract") delivered by the same Directorate, a certificate from the Moukhtar (or the district mayor) identifying the heirs, and, if the decedent left property, a receipt from the Ministry of Finance certifying that the estate has been declared to the services of Tax on Inheritance.

The judgment or judicial certificate of inheritance *Hassr Eress* certifies the death of the decedent at specific place and time-designates the heirs, and determines their respective estate portions in execution of the applicable inheritance law.

iii.  Rendered by the single Judge in a non-adversarial way, the judgment of *Hassr Erss* is valid and reliable in its content until proven otherwise. Despite its relative cogent force, the judgment of Hassr Erss is enforceable without additional formalities and enables the heirs to carry out administrative acts as well as acts of disposal, such as the transfer to the heirs mentioned in the judgment of bank accounts that belonged to the decedent.

5

### 1.3.2 The certificate of the "Moukhtar" (District Mayor's certificate)

i.  In addition to judicial certificates of inheritance, other means of establishing the status of legal heirship are available.

    The Lebanese Supreme Court ruled in this respect that: *"Although it is true that it has become common practice to establish the status of heir by submitting a judgment of Hassr Erss, other means of establishing this status are not prohibited."*
    *(Cass. Lib. 3rd chamber, n° 21/52, dated 9/4/1968, Al Adl 1969 p.373)*

ii. On the basis of this jurisprudence, legal heirship may be established through the certificate of the Mukhtar or District "Mayor" who is vested by law n° 27 dated 27/11/1947 with a public mandate.  The Mayor's certificate lists the heirs of the decedent and specifies their kinship with the latter, without indicating the hereditary shares of each. This certificate is delivered by the Mukhtar according to the testimony of the decedent's relatives, and on the basis of certificates of the decedent's family civil records delivered by the Directorate of Civil Status within the Ministry of Interior. These records contain the birth, divorce, death entries etc… of a household of family unit. The Mukhtar certificate is reliable until proven otherwise. It is worth noting that *Article 36 of Law n° 186 dated 15/3/1926* admits expressly the evidence of the status of heir by the means of the Mukhtar's certificate. According to this Article, where the status of heir is disputed by a third party, the judge may rely on the Mukhtar's certificate to establish the heir provided the other heirs confirm it (*in this respect, Appeal Mount-Lebanon, dated 23/3/1973, Hatem Collection (Hatem) n° 136, p.35*)

### 1.3.3 The family civil status record

i.  To obtain the Judicial Certificate of inheritance as well as the Mukhtar's Certificate, the heirs must obtain from the Directorate of Civil Status, within the Ministry of Interior, certificates of family civil status records.

6

ii.  The family civil status records establish the kinship or affinity with the decedent. These records contain the birth, divorce, death entries, etc. of a household or family unit. The records are entered according to the provisions of Article 11 of the law dated 7/2/1951, on the basis of declarations made by the interested parties, and countersigned by the Mukhtar for authentication. Like the Mayor's certificates, these certificates are reliable until proven otherwise.

**Issue 2:**  **Claims for compensation for emotional distress suffered as the result of wrongful death or injury of an immediate family member**

2.1. The rules of the Lebanese law pertaining to a wrongdoer's responsibility in tort are set forth in Articles 122 to 134 of the Code of Obligations and Contracts (C.O.C).

.   Articles 122 and 134 of the C.O.C set forth the basis for the liability for damages caused by actions in tort and the compensation due for such damages.

Article 122, paragraph 1 provides that:

> *Any act of any person causing an unjust damage to other persons, compels its author, if he/she is capable of discerning such damage, to compensate.*

Article 134 provides that:

> *Compensation due to a victim of an offence or a quasi-offence (tort) must correspond, in principle, to the entire damage the victim has sustained.*

> *Moral Damage as well as material damage are taken into account.*

> *The judge may take into account emotional damage when it is justified by a legitimate kinship or relation by marriage alliance. Indirect damage[7] is to be taken into*

---

[7] A indirect damage is a damage that has ensued and is the consequence to another direct damage.

7

*consideration provided it is clearly linked up to the tortious or quasi-tortious act. In principle, only actual damage that is actually incurred is to be taken into account in the assessment of compensation.*

*Exceptionally, however, the judge may take into consideration prospective damage, if, first, its occurrence is certain and if, in addition, the judge is able to evaluate it with full accuracy in advance.*

2.2   The provisions of Article 134 reflect the conditions of compensation for the damage resulting from an action in tort as they were set by the French Supreme Court (*Cass. Franç.*) on the eve of the promulgation of the C.O.C. in March 1932.

In summary, the following types of damages may be compensated:

- Moral damage/mental distress as well as well as physical or economic damage;

- Prospective damage as well as actual damage, provided the former's occurrence is ascertainable;

- Indirect damage provided it is linked by a causal connection to the generating fact;

- Damage incurred by a close relative on account of injury suffered by the victim (damage called "reflected"/"collateral" or "by ricochet").

In short, an individual who suffers emotional distress as the result of the wrongful death or injury of an immediate family member may assert a claim for moral damages under Lebanese law. (*refer to M. Aoujeh, Civil Law, V. II, Civil Responsibility, Beirut 1996 (in Arabic); A. Naquib, op.cit. p, 344).*

8

**Issue 3**: <u>Heir's rights to bring a claim for decedent emotional distress suffered prior to death</u>

    3.1 Under Lebanese law (and under French law), a claim for compensation by a victim for a tortious act is part of the estate of that victim upon death, provided that the tortious act did not result in the instantaneous death of the victim. Such claim devolves to the victim's heirs who continue the legal person the decedent. Thus, the heirs come into legacy of the claim for damages that was at the decedent's disposal (i.e., survives the decedent's death) and may assert the claim for damages as the legal person of the decedent victim regardless of whether the decedent had instituted the claim before death or not.

*(See Cass. Franç.. 18.1.1943 Dalloz critique (D.C) 1943, p .45 ; Cass., Franç. joint chambers 30.4.1976. (Dalloz) (D). 1977 p. 185 ; Cass. Liban. Arrêt 11/1970).*

Beirut, November 18, 2010

9